[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11513
_____

D.C. Docket No. 3:11-cv-00311-BJD-JRK

FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Petitioners-Appellants,

versus

SHKELQIM FANA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 9, 2014)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

We have had the benefit of oral argument in this case, and have carefully reviewed the briefs and relevant parts of the record. The district court in this case granted relief to Fana on three grounds of his petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. The State appeals, challenging the judgment of the district court on each of the three grounds. We address each ground in turn.

## A.

The district court held that Fana's trial counsel rendered ineffective assistance of counsel in failing to object to the Florida standard jury instruction on the forcible-felony exception to self-defense. The forcible-felony instruction given at Fana's trial provides:

> However, the use of force . . . [by Fana] is not justified if you find . . . [that] Fana was attempting to commit, committing, or escaping after the commission of attempted first-degree murder.

Trial Tr. at 929. Fana thereafter contended in his state post-conviction petition for relief that trial counsel's failure to object to the instruction constituted ineffective assistance of counsel. The state habeas court denied the claim, stating:

> The Standard Jury Instructions, as approved by the Supreme Court of Florida, were provided to the jury in this case. In this case, the model jury instructions were followed when instructing the jury and counsel cannot be termed ineffective for failing to object to a standard jury instruction which has not been invalidated at the time of a defendant's sentencing. Thompson v. State, 759 So. 2d 650, 665 (Fla. 2000). The failure to object to a jury instruction, which is later found to be

2

> improper is not ineffective assistance.  <u>Thomas v. State</u>, 838 So. 2d
> 535 (Fla. 2003).

<u>Fana v. State</u>, No. 16-2000-CF-4473-AXXX  at \*6-\*7 (Fla. Cir. Ct. Jan. 15, 2010)

(emphasis added).  This ruling was affirmed on appeal to the First District Court of

Appeal.  <u>Fana v. State</u>, 54 So. 3d 492 (Fla. 1st DCA Feb. 17, 2011).

On federal habeas review, the district court acknowledged that these state

court decisions were adjudications on the merits, and thus warranted deference

pursuant to 28 U.S.C. §2254(d), but it concluded that "the state courts'

adjudications of this claim involved an unreasonable application of clearly

established federal law, as determined by the Supreme Court of the United States."

District Court Order, Docket 33, at 44.  Yet, the actual analysis of the district court

gave no deference to these state court decisions, which had found no ineffective

assistance by trial counsel as a result of the latter's failure to object to a standard

jury instruction that had not yet been invalidated at the time of trial;  <u>see</u> <u>id.</u> at 52–

54.  Nor did the district court adequately explain why these state court decisions

constituted an unreasonable application of clearly-established federal law.  We

therefore conclude that the district court erred.

Applying the appropriate deference, we disagree that the state court

decisions "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme

Court of the United States."  28 U.S.C. §2254(d)(1).  The clearly-established

3

federal law is set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). See discussion infra. We find no basis to conclude that the state court decision constituted an unreasonable application of Strickland. At the time of trial, no Florida District Court of Appeal, including the First District Court of Appeal, had held that the standard instruction which Fana now challenges was invalid or that the instruction could be used only where the person claiming self-defense is engaged in another, independent "forcible felony." It is true that a different District Court of Appeals, the Fourth District Court of Appeal, so held after completion of the trial in this case. Giles v. State, 831 So. 2d 1263, 1265–66 (Fla. 4th DCA 2002).[1] However, numerous decisions of this Court have construed Strickland as not requiring counsel to make arguments based on predictions of how the law may develop. See, e.g., Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by Strickland, an attorney need not anticipate changes in the law."); Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions

---

[1]    Indeed, in McGahee v. State, 600 So. 2d 9 (Fla. 3d DCA 1992), the majority had rejected an argument articulated by the dissent which foreshadowed the Giles holding that the forcible-felony instruction was appropriate only where the person claiming self-defense was engaged in another, independent forcible felony. Id. at 10. Thus, as of the time of trial, not only had no case adopted the position of the McGahee dissent (i.e., the later position of the Giles court), but there was an on-point case in still another District Court of Appeal indicating that the instruction was not erroneous.

of how the law may develop."); <u>Funchess v. Wainwright</u>, 772 F.2d 683, 691 (11th Cir. 1985) ("The failure of counsel to anticipate that an otherwise valid jury instruction would later be deemed improper by the state judiciary does not constitute ineffective assistance of counsel."). Accordingly, we conclude that the state court's rejection of Fana's claim of trial counsel's ineffective assistance was not an unreasonable application of federal law.

B.

The second ground on which the district court granted habeas relief for Fana was Fana's claim that his appellate counsel was ineffective in failing to argue on direct appeal that the trial court's giving of the forcible-felony instruction constituted fundamental error. This was Fana's Ground 14 in the district court, and is sometimes referred to herein as Ground 14. The district court applied de novo review to this claim. In its brief to this Court, the State appears to have conceded that although this claim was presented to the state courts, the latter did not rule on it; that the claim is exhausted and free from procedural bar; and that the district court properly exercised de novo review (i.e., gave no deference to the state court decision). Accordingly, we likewise apply de novo review to this claim, and address its merits.

As noted above, Fana's trial counsel did not object to the forcible-felony instruction. Likewise, appellate counsel did not assert on appeal that the trial court

committed error when it gave this instruction: an omission that Fana now contends to have constituted ineffective assistance.  But, as set out above, it was not until after conclusion of the trial in this case that a Florida court ever held that the forcible-felony instruction is appropriate only when the person claiming self-defense was engaged in a separate, independent forcible felony.  See Giles, supra.  At the time Giles was issued, Fana's direct appeal was pending, with Fana's brief having been filed several months earlier.  Fana argues that once Giles had been issued, appellate counsel should have sought leave to supplement his initial brief on direct appeal to raise this Ground 14 as an additional issue.  The district court agreed that appellate counsel's failure to do so constituted ineffective assistance, and granted relief for Fana on this ground.  We disagree, and reverse.

To prevail on his claim that appellate counsel was ineffective in failing to allege that the trial court had erred by giving the standard, approved instruction on self-defense, Fana must establish both deficient performance by appellate counsel and prejudice.  Strickland, 466 U.S. 688, 104 S.Ct. 2052.  To satisfy the performance prong of the test, Fana must show that his appellate counsel's representation fell below an objective standard of reasonableness.  Id. at 687, 104 S. Ct. at 2064.  To meet the prejudice prong, Fana must establish a reasonable probability that, but for counsel's errors, the outcome would have been different.

6

Id. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The district court concluded that appellate counsel performed deficiently because he should have become aware of the Giles decision during the appeals process and then should have sought leave to supplement his initial brief in order to raise the erroneous jury instruction claim. We disagree that appellate counsel's failure to so act rendered his performance deficient under Strickland. First, even if we assume that an appellate attorney should, during the pendency of the appeal, continue monitoring applicable case law from the appellate court reviewing the appeal, Fana's appellate counsel would have never discovered Giles through such a process. This is so because Fana's appeal was before the First District Court of Appeal, but Giles was a decision by a different appellate court: the Fourth District Court of Appeal. As such, it was not binding in the First District Court of Appeal in which Fana's direct appeal was pending. Pardo v. State, 596 So. 2d 665, 667 (Fla. 1992) ("As between District Courts of Appeal, a sister district's opinion is merely persuasive." (quoting State v. Hayes, 333 So. 2d 51, 53 (Fla. 4th DCA 1976))).

Second, even had appellate counsel happened upon the Giles decision after filing his brief, his failure to seek leave to add a Giles claim would not necessarily have been unreasonable. Besides the fact that, arising out of a different district

7

appeals court, Giles had no precedential effect in the First District, Giles could be readily distinguished from Fana's case for another significant reason. That is, Giles had objected at trial to the giving of the forcible-felony instruction; Fana had not. Fana's failure to object at trial meant that on appeal, merely showing error in the instruction would have been insufficient to obtain relief. Instead, Fana would have had to show that the giving of the forcible-felony instruction constituted "fundamental error." And it was not until after Fana's conviction had been affirmed on appeal that a Florida appellate court had held that the erroneous giving of the forcible-felony instruction could constitute "fundamental error."[2] See Fair v. Crosby, 858 So. 2d 1103, 1104–05 (Fla. 4th DCA 2003), abrogation recognized by Clark v. State, 23 So. 3d 1213, 1215 (Fla. 4th DCA 2009).

In short, on the above facts, we do not find appellate counsel's failure to seek to amend his appeal brief to add a Giles claim to have fallen below an objective standard of reasonableness. But even were we to assume that it had, the district court still erred in granting him relief, because Fana has not demonstrated prejudice, as is required by Strickland. That is, he has not established by a reasonable probability that, but for appellate counsel's errors, the outcome would

---

[2]    And it was not until September 11, 2006 that the First District Court of Appeal ruled that the giving of the forcible-felony instruction could constitute fundamental error. See Williams v. State, 937 So. 2d 771, 774 (Fla. 1st DCA 2006). This was some three years after Fana's conviction had been affirmed by the above court.

have been different.  As noted, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."  Supra at 7.

In addressing this prejudice prong of the analysis, the district court focused on whether the outcome of the trial would have been different had the jury not been given the forcible-felony instruction.  The court concluded that the jury likely would not have convicted, absent this instruction.  We disagree.  To explain why, an examination of the evidence presented at trial is necessary.

Bujari, the victim of the attempted murder for which Fana was convicted, survived and testified at Fana's trial.  He testified that he and Fana had been friends, but had fallen out several months prior.  On the night of the crime, Bujari testified that he received twenty calls from someone who remained silent when Bujari answered.  Unable to sleep, he went to work at the bakery where he was employed.  He was alone at work, unloading the bread truck, when he turned and saw Fana holding a knife.  Fana cursed him and stabbed him in the stomach.  A struggle ensued.  Fana pulled out a second knife from behind his back, and kept stabbing Bujari.  Bujari thought he blacked out at some point.  After Fana left, Bujari regained consciousness and managed to call 911.  In the 911 recording, which was played for the jury, Bujari said, "Help, I am dying," and he identified Fana as the one who had stabbed him with a knife and tried to kill him.

The officers who arrived at the scene testified that they found Bujari lying on the floor, holding his intestines, surrounded by a large amount of blood. Bujari told the officers that Fana had attacked him and gave them his name and address. The officers went to that address to arrest Fana. After being Mirandized, Fana essentially confessed that he had tried to kill Bujari:

> I went there to kill him because he was fucking my wife. I took two knives and I don't know where they are now. . . .I went over to kill that mother fucker. Is he dead?

Trial Tr. at 458–59.

Notwithstanding this admission, at trial Fana testified that he went to the bakery and went inside, where he saw his friend Bujari. When Fana asked how Bujari was doing, the latter grabbed two big knives and attacked Fana. Fana testified that he was scared and thought Bujari was trying to kill him. So, Fana found a knife on a table and fought back to defend himself.

Besides the fact that this testimony was contradicted by Fana's admission to police officers that he had gone to the bakery, armed with two knives and the intention to kill Bujari, it was likewise undermined by other testimony. As to Fana's testimony that he had just happened upon a knife at the bakery, Fana's son, Jurgen, testified that he had observed his father take knives, wrap them in a brown paper towel, and place them in the back of his waistband before leaving the house on the night of the attack. Jurgen identified the knives in a photograph. Moreover,

10

an employee and owner of the bakery testified that the knives left at the scene were not knives of the bakery, nor of the same type as the knives there.

As for Fana's testimony that Bujari was the aggressor and that he, Fana, was merely trying to protect himself from Bujari's unprovoked attack, testimony of medical professionals undermined that statement as well. A doctor who had examined Bujari after the attack testified that the contents of Bujari's abdomen were exposed, there was damage to his lungs and liver, and there was an estimated blood loss of up to 30%. A nurse testified that she evaluated Fana's medical condition on his arrival at jail. She reported that he had only superficial lacerations on his right arm and the knuckle of his left hand, and some scratches on his face.

We conclude that with such overwhelming evidence contradicting Fana's claim of self-defense, there is no reasonable probability that the jury would have reached a different verdict had the instructions not included the now-prohibited forcible-felony language. Indeed, so inconsequential was this language to Fana's case that neither the prosecutor nor defense counsel ever mentioned the substance of the instruction in either of their closing arguments. For the same reasons, we conclude that Fana nonetheless received a fair trial and giving the forcible-felony instruction did not constitute fundamental error under Florida law.[3] See Holiday v.

---

[3]    As noted supra at 5, we are required to review this issue de novo, because, although the Florida First District Court of Appeal rejected Fana's argument that appellate counsel rendered

State, 753 So. 2d 1264, 1268–70 & n.3 (Fla. 2000) (holding that an erroneous instruction on an affirmative defense was not fundamental error where the defendant's use of the defense was "tenuous" and the instruction did not otherwise violate due process); Smith v. State, 521 So. 2d 106, 108 (Fla. 1988) (holding that the doctrine of fundamental error should be applied only in rare cases where either a jurisdictional error appears or where the interests of justice present a compelling demand for its application, and concluding that an incorrect jury instruction on an affirmative defense was not fundamental error because it was not "so flawed as to deprive defendants claiming the defense . . . of a fair trial").

Because we conclude that giving the forcible-felony instruction at Fana's trial was not fundamental error, it follows that the performance of Fana's appellate counsel was not constitutionally deficient. Appellate counsel could have reasonably concluded that it would have been futile to attempt to raise an unpreserved claim absent an ability to show that fundamental error had occurred. Indeed, at the time of the direct appeal here, no Florida appellate court had held that the giving of the forcible-felony instruction was a fundamental error and the First District Court of Appeal had not even found the instruction, itself, to be erroneous. From our conclusion that the instruction did not constitute fundamental

---

ineffective assistance by failing to assert error in the trial court's giving of the forcible-felony instruction, it did not do so on the merits of the claim, but instead summarily denied Fana's request to amend his habeas petition to include this ground.

error also arises the inference that there is not a reasonable probability of a different result on appeal, even had appellate counsel attempted to belatedly raise this claim.

## C.

Finally, the district court granted relief on Ground 13—ineffective assistance of appellate counsel for failing to raise on direct appeal the unpreserved alleged error in sentencing Fana on the basis of the crime of attempted second degree murder with a deadly weapon, as opposed to the crime that he was convicted of, attempted second degree murder with a weapon. Order at 69. The district court concluded that appellate counsel was deficient and that Fana also satisfied the prejudice prong of Strickland. Id. at 74. We conclude that the district court erred in several respects. The district court reviewed the issue de novo, and failed to afford the state court judgment the deference it was due on this issue. Moreover, the alleged error, even if error, was unpreserved, and clearly was not fundamental error which appellate counsel could raise.[4] Finally, the district court's conclusion

---

[4] Even if appellate counsel could have moved in the trial court to correct the alleged error, and even if we entertain that possibility despite Fana not having raised it sooner, appellate counsel clearly would not have been deficient in failing to do so for the reasons noted in the next sentence in the text and in footnote 5.

13

that the alleged error resulted in a different outcome is pure speculation.[5]  We reverse the judgment of the district court with respect to this issue.

In sum, we reverse the judgment of the district court on each of the three claims on which the district court granted relief.  The case is remanded with instructions to enter judgment denying Fana's petition for writ of habeas corpus.

REVERSED and REMANDED.

---

[5]    The sentencing judge tried this case and heard all of the gruesome evidence.  In this case, the knives used by Fana were not only "weapons," they were used in a "deadly" manner.  The First District Court of Appeal considered this claim on the merits, and denied it.  We agree with the implicit ruling of that court that there is little or no likelihood that the sentencing judge would have changed the sentence had the alleged error been pointed out; and, in any event, the First District Court of Appeal clearly was not unreasonable in applying the Strickland standard.